## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| FRANKIE ROCCHETTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:12-7447 |
| | ) | |
| LOWE'S HOME CENTERS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' Motion for Summary Judgment (Document No. 30.), filed on September 11, 2013. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 32.) Plaintiff filed his Response on October 9, 2013, and Defendants filed their Reply on October 18, 2013. Having considered the circumstances presented and applicable law, the undersigned finds, and respectfully recommends, that Defendants' Motion for Summary Judgment should be granted.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 2012, Plaintiff filed his Complaint in the Circuit Court of McDowell County, West Virginia.[1] (Document No. 1, pp. 10 - 16.) Plaintiff names the following as Defendants: (1) Lowe's Home Center, Inc. ["Lowe's"]; and (2) The Gorilla Glue Company ["Gorilla Glue"]. (Id.) In his Complaint, Plaintiff alleges as follows:

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

I'm filing a 40,000,000.00 dollar lawsuit against Lowe's Company and Company A, B, C, and D concerning the Gorilla Tape that I bought from Lowe's Bluefield, Virginia store that they are selling for the Gorilla Glue Company in Cincinnati, Ohio. This tape is poison to humans that uses it. It has no labeling on it other than the Gorilla Tape is tough, will stick to smooth, rough and uneven surfaces and is non-electric this is all that's on the label of this tape. Does not have any warnings of any kind of human use. What the label doesn't tell you is it's toxic titanium dioxide, cobalt and contains all kinds of rubber and other chemicals in it.

On one page of the poison control papers states that it can be life threatening. Also, can cause cancer in rats in the dust form, but not likely since it is in solid form. But it could. It says try to avoid getting contact with it, none of this is on the label. You should have gotten in contact with Poison Control Center before you sold this tape to your customers. This tape is much stronger to get off than the regular tape, the label never said how to use it nor how not to use it. The Poison Control papers say it makes red spots when you use it and may cause blisters. The doctors do not know how to treat and cure it, nor does the Company.

I've had 4 back surgeries and I used a little piece of this tape to stabilize a muscle so I could turn from one side to the other, which I have used many times black tape, all kinds of tape on my back which never bothered me. How was anyone to know that the Gorilla Tape was toxic without a label stating it. If they label the Gorilla Tape as it is stated in the Poison Control papers then no one would buy it.

I have pictures to show how it blisters the biggest part of my body. A large spot on my stomach started to ooze fluid out for about two weeks or so, it filled 7 paper towels in about 30 minutes. It started like a hundred bee stings or more and burned like cigarettes fire, its been a living hell and its no end to it. It has been nearly two years of this pain. I have to use salve 2, 3, 4 times a day to try to hold it down some what. It will be with me the rest of my life.

This is negligent on Lowe's Company and Company's A, B, C, and D by not checking this tape out with poison control. EPA wants the pictures which also show how it crusted my eyes over. I also talked to some of the workers in the commercial department at the Lowe's store in Bluefield, Virginia concerning how this tape affected me, they said they would never buy this tape.

Even though I used some on my back, it is the same difference when it blisters you, your fingers or wherever else, because you have to use your fingers to pull the tape off the roll. Facts of this tape needs to be put on Facebook and wherever else because the people need to know how toxic this tape is.

You sold this tape in bad faith without a warning label on it. This occurred on October 8, 2010, I had to go to the hospital October 13, 2010, and from one dermatologist to another, without any cure. I went to the Clinic in Northfork, WV. They sent me to Princeton Community Hospital for treatments. From there, they sent me to the dermatologist, Dr. David Tolliver.

(Id.)

2

On November 6, 2012, Defendants filed their Notice of Removal with this Court. (Document No. 1.) Defendants filed their Answer on November 13, 2012. (Document No. 5.) On January 14, 2013, the undersigned conducted a Scheduling Conference and entered a Scheduling Order. (Document Nos. 12 - 13.) On September 11, 2013, Defendants filed their Motion for Summary Judgment and Memorandum in Support. (Document Nos. 30 and 31.) Specifically, Defendants argue they are entitled to summary judgment based on the following: (1) "Gorilla Tape is incapable of causing the harm Mr. Rocchetti alleges, and he thus fails to establish causation" (Document No. 31, pp. 5 - 7.); (2) "Rocchetti has failed to produce any evidence that would support his contentions" (Id., pp. 7 - 8.); (3) "Gorilla Tape was not required to warn against direct application to skin" (Id., pp. 9 - 10.); and (4) "Mr. Rocchetti's negligence bars recovery" (Id., pp. 10 - 11.).

As Exhibits, Defendants attach the following: (1) A copy of Plaintiff's Complaint as filed in the McDowell County Circuit Court (Document No 30-1.); (2) A copy of the "Expert Disclosures of Defendants, Lowe's Home Centers, Inc. and The Gorilla Glue Company" (Document No. 30-2.); (3) A copy of the "Supplemental Expert Disclosures of Defendants, Lowe's Home Centers, Inc. and The Gorilla Glue Company" (Document No. 30-3.); (4) A copy of the "Affidavit of Mary-Ellen McGrath" (Document No. 30-4.); (5) A copy of the "Affidavit of Dr. Richard Capito" (Document No. 30-5.); (6) A copy of pertinent pages from Plaintiff's Deposition conducted on July 30, 3013 (Document No. 30-6.); (7) A copy of pertinent pages of  Plaintiff's Response to Defendants' Interrogatories (Document No. 30-7.); and (8) A copy of "MSDS: Gum Spirts of Turpentine" (Document No. 30-8.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on September 12, 2013, advising him of the right to file a response to the Defendants' Motion for

Summary Judgment. (Document No. 32.) Plaintiff filed his Responses in Opposition on October 9, 2013. (Document Nos. 33 and 34.) First, Plaintiff argues that his "claim does exist [and] the Gorilla Tape is responsible for the rash created on my back, stomach, arm, legs, and face." (Document No. 33, p. 1.) Plaintiff explains that his "torso was not encircled, only a 3" strip." (Id., pp. 1 and 14.) Plaintiff asserts that "the tape did cause the blistering to my skin and according to Dr. Kerin Stein there is no cure for it." (Id., p. 1.) Plaintiff states that he has "shown evidence of my claims [because] Dr. Stein has made it clear in the first part of his letter." (Id., p. 22.) Plaintiff claims that "Dr. Stein and Dr. Asbury both treated me for the Gorilla Tape rash only and the Poison Control papers prove the rest of it." (Id.) Plaintiff states that the Poison Control papers contain all the proof he needs to support his claim that the Gorilla Tape caused his skin condition. (Id., p. 24.) Plaintiff claims that the "Poison Control papers said not to get in contact with this tape that could cause blisters on your hands, cancer in rats." (Id., p. 31.)

Second, Plaintiff claims that "there was no label to say you couldn't use it on your skin, your fingers are part of your skin and therefore, the Gorilla Tape would also cause blistering" to your fingers. (Id., p. 2.) Plaintiff explains that he decided to use the Gorilla Tape on his back because he did not have a back brace and he felt it was safe to use the tape on his skin because the label did not contain a warning and "you have to use your fingers if you use the tape for any reason and your fingers are part of your skin." (Id., p. 27.)

Third, Plaintiff states that "according to Ms. Mary Ellen McGrath's letter, she knew that the tape would make blisters on your hands and skin which she said in her own words."[2] (Id., p. 2.) Plaintiff explains that Ms. McGrath acknowledged that "some people were highly sensitive to the

---

[2] The undersigned has reviewed Ms. McGrath's letters and finds no evidence that Ms. McGrath stated that the Gorilla Tape would cause blisters.

rubber that is in it and allergic to this tape, that also should be labeled." (Id.) Fourth, Plaintiff argues

that the opinions of Dr. Richard and Dr. Capito are unreliable because defense counsel "paid the

independent medical examiners to write letters in [Defendants'] favor." (Id., pp. 2 - 5, 21.) Plaintiff

argues that even though "Dr. Clyde Richard said the tape didn't contain cobalt," Dr. Donald Asbury

stated that "cobalt and silver showed up in his test." (Id., p. 3.) Plaintiff also contends that

"[w]hether it was cobalt or not, the rash is from the tape." (Id., p. 19.) Plaintiff disputes that titanium

dioxide is not harmful because "all the other kinds of tape that I have used, including the duct tape,

it never caused me any problems." (Id., p. 20.) Plaintiff argues that Gorilla Tape is the cause of his

rash because the adhesive is "2 or 3 times stronger" than the adhesive used in duct tape. (Id., pp. 20 -

21, 24.) Plaintiff further contends that although "Dr. Richard claims it was a misuse of the product,

. . . none of this would have happen" if the produce was properly labeled. (Id., p. 3.)

Fifth, Plaintiff argues that he "never used any turpentine." (Document No. 34 and Document

No. 33, pp. 3, 7,11, and 15.) Plaintiff contends that Dr. David Tolliver and Dr. Asbury incorrectly

stated that Plaintiff used turpentine and Dr. Asbury subsequently amended his report "stating that

[Plaintiff] didn't use turpentine."[3] (Id., pp. 3 - 4, and 7.) Plaintiff claims that Ms. Hoffman of the

Virginia Dermatology and Ms. Benson from Prosar conspired to "put turpentine in the doctor's

report."[4] (Id., pp. 17, 22 - 23.) Plaintiff explains that he "never used turpentine and only used a three

_____

[3]  In Dr. Asbury's chart notes dated June 26, 2012, Dr. Asbury states that Plaintiff "did mention to me today that he has not used turpentine in the past topically on his skin." (Document No. 34-1, p. 7.)

[4]  Plaintiff argues that "Shannon Hoffman, Crystal Hodges, and Dr. Kia Benson should be prosecuted for conspiracy and whoever else that may have been involved, to lie, and say I used turpentine salve, alcohol and drugs." (Document No. 33, p. 27.) It is well established, however, that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). Thus, Plaintiff has no right to initiate criminal proceedings against the above individuals. *Young v. Herald*,

inch strip of Gorilla Tape for a two hour period, which caused all the blistering and that was the only time [he] used the tape." (Id., p. 15.)

Sixth, Plaintiff argues that Dr. Capito's opinion is not creditable because he is being paid by Defendants. (Id., pp. 6 - 8.) Plaintiff further explains that Dr. Capito incorrectly states that Plaintiff "had a staph infection" and that Plaintiff "made multiple visits to the hospital without complaining of the skin rash." (Id.) Plaintiff asserts that Dr. Capito is incorrect in his opinion that "the steroid salve caused the problem" and that Plaintiff "didn't suffer injury or damages related to the Gorilla Tape." (Id., pp. 8 and 10 - 11.) Plaintiff alleges that the "biopsy that was taken from both sides of my body came back that I was highly allergic to the ingredients that is in the Gorilla Tape and not drugs that caused it." (Id., p. 11.) Plaintiff states that he "would like for Dr. Capito to prove the Gorilla Tape wasn't the cause of the rash or my skin." (Id., p. 12.) Plaintiff further disputes that Dr. Asbury "warned me against using steroid creams." (Id.)

Seventh, Plaintiff argues that Mary Ellen McGrath incorrectly states that Plaintiff "invented a salve that was working better than the prescription salve." (Id., p. 8.) Eighth, Plaintiff contends that he was not "belligerent, yelling and angry" when he spoke to Dr. Kia Benson from Prosar. (Id., pp. 13 - 14.) Ninth, Plaintiff argues that Gorilla Tape is a defective product because Poison Control

---

2005 WL 1048117, * 8 (E.D.Ky.)(stating that the authority to initiate criminal complaints rests exclusively with state and federal prosecutors); *Kennedy v. Anderson*, 373 F.Supp 1345, 1346 (E.D.Okl. 1974)(stating that any charge brought under 18 U.S.C. § 242 "may only be initiated by a federal grand jury or a United States Attorney"); and *Dixon v. State of Maryland*, 261 F. Supp. 746 (D.Md. 1966)(Prisoner could not institute criminal proceedings against a State or its officers for violation of his rights under the color of law). Furthermore, the Court does not have the authority to direct that an individual be prosecuted. *See United States v. Batchelder*, 442 U.S. 114, 124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979)(stating that the decision whether to prosecute and what charges to file rest in the prosecutor's discretion); *Inmates of Attica Correctional Facility v. Rockefeller*, 447 F.2d 375 (2nd Cir. 1973)(finding that the authority to investigate and initiate criminal complaints rest exclusively with the United States Attorney).

tested the tape and determined that a person should "not get in contact with the adhesive." (<u>Id.</u>, p. 18.) Finally, Plaintiff states that he does not "think <u>Bradley v. Appalachian Power Company</u> applies to me concerning this matter and I should recover for the damages that this tape has caused me." (<u>Id.</u>, p. 27.)

As Exhibits, Plaintiff attaches the following: (1) A of a letter from Dr. David Tolliver, Dermatology Clinics of Southwest Virginia, dated June 14, 2011 (Document No. 34-1, p. 1.); (2) A copy a letter from Dr. David Tolliver addressed to the West Virginia Board of Osteopathy dated June 13, 2011(<u>Id.</u>, pp. 2 - 4.); (3) A copy of Dr. Donald W. Asbury's medical notes regarding Plaintiff (<u>Id.</u>, pp. 5 - 7.); (4) A copy of a letter from The Gorilla Glue Company addressed to Plaintiff dated February 11, 2011 (<u>Id.</u>, p. 8.); (5) A copy of a letter from Plaintiff addressed to Mary E. McGrath dated February 17, 2011 (<u>Id.</u>, pp. 9 - 10.); (6) A copy of letters from Mary-Ellen McGrath addressed to Plaintiff dated February 22, 2011, and September 7, 2011 (<u>Id.</u>, pp. 11 - 12.); (7) A copy of a letters from the UMWA Health and Retirement Funds addressed to Plaintiff dated August 16, 2011, and August 30, 2011 (<u>Id.</u>, pp. 13 - 14.); (8) A copy of a letter from Dr. Kevin Stein dated March 6, 2013 (<u>Id.</u>, p. 16.); (9) A copy of letter from Jennifer Coty addressed to Plaintiff dated June 16, 2011 (<u>Id.</u>, p. 17.); (10) A copy of an automated e-mail that Plaintiff received on November 1, 2012, after he submitted a report to the United States Consumer Product Safety Commission ["CPSC"] (<u>Id.</u>, p. 19.); (11) A copy of Plaintiff's report submitted to the CPSC on August 3, 2012 (<u>Id.</u>, pp. 20 - 23.); and (12) A copy of an article entitled "Warning About Pets Eating Gorilla Glue" obtained from www.thriftyfun.com (Document No. 35, pp. 2 - 3.).

On October 18, 2013, Defendants filed their Reply. (Document No. 36.) Defendants continue to argue that they are entitled to summary judgment because Plaintiff's Response "fails to place into

context any relevant issue of material fact as to product labeling and/or causation of damages as argued by Defendants." (<u>Id.</u>, p. 2.) Defendants note that Plaintiff "has failed to produce any expert testimony as against Lowe's Home Centers, Inc. and/or the Gorilla Glue Company that opines that Lowe's Home Centers, Inc. and/or the Gorilla Glue Company caused Mr. Rocchetti's medical condition and/or failed to properly label a product purchased by Mr. Rocchetti." (<u>Id.</u>, p. 3.) Defendants note that Plaintiff's Response "presents only Mr. Rocchetti's bare allegations that the application of a three-inch piece of Gorilla Tape to his back for a two-hour period of time caused him a chronic skin condition." (<u>Id.</u>) Defendants state that Plaintiff's "sole attempts at refuting Defendants' position are to attach and/or refer to (vaguely) random documents relating to his medical records, his communication with Gorilla Glue Company and/or poison control papers." (<u>Id.</u>, p. 4.) Although Plaintiff argues that the poison control papers (MSDS) is all the evidence he needs to show that Gorilla Tape was improperly labeled, Defendants contend that a "review of the MSDS on page 5 under number 15 'Regulatory Information' – shows that Gorilla Tape is classified and labeled according to International Standards, specifically EU directives and their amendments." (<u>Id.</u>) Thus, Defendants assert that Plaintiff's "argument that Gorilla Tape is improperly labeled must fail based on the MSDS which is proffered by Mr. Rocchetti himself and based upon the affidavit of Dr. Clyde Richard." (<u>Id.</u>) Defendants explain that "[p]roduct labeling is an issue that is outside the normal perview of an individual's understanding and requires expert testimony." (<u>Id.</u>)

Next, Defendants assert that the "documents supplied by Mr. Rocchetti do no support his asertion that Gorilla Tape caused Mr. Rocchetti to develop a chronic skin condition for which there is no 'cure.'" (<u>Id.</u>, p. 5.) Defendants state that Plaintiff's "physicians do not opine with any reasonable degree of medical certainty that Mr. Rocchetti's chronic skin condition was 'caused' by a three (3)

inch piece of Gorilla Tape being placed on his back for two (2) hours." (Id.) Third, Defendants state
that Plaintiff is threatening to post information about Defendants on Facebook if Defendants do not
settle with Plaintiff. (Id., pp. 5 - 6.) Fourth, Defendants state that Plaintiff acknowledged that he
bought the tape at Lowe's for use on his windows and that Lowe's does not sell medical tape. (Id.,
p. 6.) Defendants further point out that Plaintiff's "recitation of the facts that no one independently
at Lowe's advised Mr. Rocchetti that Gorilla Tape was appropriately used as a back brace for his
'muscle.'" (Id., p. 7.) Finally, Defendants argue that they have "produced substantial and irrefuted
evidence that Gorilla Tape is not required to label against any direct application to the skin and that
the application of a three-inch piece of Gorilla Tape to the back of Mr. Rocchetti for a two-hour
period of time did not cause his injury or damage." (Id., pp. 10 - 11.)

As Exhibits, Defendants attach the following: (1) A copy of pertinent pages of Plaintiff's
deposition (Document Nos. 36-1, 36-2, 36-4, 36-5, 36-6, 36-8.); (2) A copy of the "Materials Safety
Data Sheet" from Gorilla Glue Company (Document No. 36-3.); (3) A copy of a letter from The
Gorilla Glue Company to the United States District Court dated October 15, 2013 (Document No.
36-7.); (4) A copy of the "Supplemental Affidavit of Dr. Richard Capito" (Document No. 36-9, pp.
1- 3.); (5) A copy of a hand-written list of Plaintiff's medications (Id., p. 4.); (6) A copy of the
"Affidavit of Dr. Kevin R. Stein" (Id., pp. 5 - 6.)

Plaintiff filed his Motion to File a Sur-Reply on October 30, 2013.[5] (Document No. 37.)
Plaintiff states that he has "produced material facts as to product labeling" and he does not "see where
[he] needs anything else beside the poison control papers and the letters of Ms. Mary-Ellen McGrath
from The Gorilla Glue Company." (Id., pp. 2 - 3.) Plaintiff continues to state that "the Gorilla Tape

---

[5] By separate Order entered this day, the undersigned has granted Plaintiff's Motion for
Leave to File Surreply.

to my back did cause my chronic skin condition and it is not a self-serving statement, it's a fact." (<u>Id.</u>, p. 3.) Plaintiff explains that he was prescribed medication to treat his skin condition. (<u>Id.</u>) Plaintiff contends that "Dr. Richard never came here nor has he ever examined me." (<u>Id.</u>, p. 4.) Plaintiff, therefore, contends Dr. Richard and Dr. Capito opinions are unreliable because Plaintiff "couldn't find in any of their reports where they knew anything about the Gorilla Tape or Glue." (<u>Id.</u>, pp. 4 - 5.) Plaintiff states that he has proven that the Gorilla Tape caused him damage because "the tape caused blisters on my back" and "Dr. Stein has mention that there is no cure for it." (<u>Id.</u>, p. 5.) Plaintiff states that "[t]his is not an allegation, it is a fact." (<u>Id.</u>) Plaintiff states that "the Poison Control papers has already specified it will cause blisters." (<u>Id.</u>, p. 6.) Plaintiff argues that there was "[n]o advertisement at Lowe's that said Gorilla Tape wasn't medical tape; there wasn't any advertisement of any kind on this Gorilla Tape when I bought it." (<u>Id.</u>, p. 7.) Plaintiff states that he "did not know it was construction tape. Just that the label said it was strong and tough and would stick on anything." (<u>Id.</u>, p. 8.) Plaintiff explains that "[t]here was no one there when I bought the tape to advise me of anything." (<u>Id.</u>, p. 8.) Plaintiff further acknowledges that "Gorilla Tape and Glue are different, but they have a lot of the same components and are made by the same company." (<u>Id.</u>, p. 9.) Plaintiff argues that the steroid cream could not have caused the rash because "no steroid cream was used until several weeks later." (<u>Id.</u>, p. 10.) Plaintiff continues to argue that he never used turpentine on his skin. (<u>Id.</u>, p. 11 - 12.)

As Exhibits, Plaintiff attaches the following: (1) A copy of the "Material Safety Data Sheet" regarding the Gorilla Tape (Document No. 37-1, pp. 1 - 5.); (2) A copy of a letter addressed to Plaintiff from Jennifer Coty, The Skin Surgery Center, dated June 16, 2011 (<u>Id.</u>, p. 6.); (3) A copy of Plaintiff's medical report dated January 6, 2011, as prepared by Dr. Donald W. Asbury (<u>Id.</u>, pp.

7 - 9.); (4) A copy of Plaintiff's medical report dated June 26, 2012, as prepared by Dr. Donald W. Asbury (Id., p. 9.); (5) A copy of a letter addressed to the West Virginia Board of Ostepathy from Dr. David Tolliver, Dermatology Clinics of Southwest Virginia, dated June 14, 2011 (Id., pp. 10 - 13.); (6) A copy of a letter addressed to Dr. Sheretz from the UMWA Health and Retirement Funds dated August 1, 2011 (Id., pp. 14 - 15.); and (7) A copy of letters addressed to Plaintiff from Mary-Ellen McGrath, Gorilla Support Team, dated February 11, 2011, February 22, 2011, and September 7, 2011 (Id., pp. 16 - 18.).

## **THE STANDARD**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

1.     **Causation:**

Plaintiff alleges that Gorilla Tape is toxic because it contains "titanium dioxide, cobalt and contains all kinds of rubber and other chemicals in it." Plaintiff claims that he used a three-inch piece of Gorilla Tape on his back for approximately two hours and the tape caused a blister to form on his back. Defendants argue they are entitled to summary judgment because Plaintiff has failed to establish causation. Defendants argue there is nothing in Plaintiff's medical records indicating that he has cobalt poisoning, titanium dioxide poisoning or an allergy to rubber. Plaintiff contends that summary judgment is inappropriate because "the Poison Control papers" contain all the proof he needs to support his claim that the Gorilla Tape caused his skin condition. Plaintiff further argues that "Dr. Stein and Dr. Asbury both treated me for the Gorilla Tape rash only and the Poison Control papers prove the rest of it."

In a strict product liability cause of action, the plaintiff carries the burden of proving a defect in the product. Geiser v. Simplicity, Inc., 2012 WL 174951, * 3 (N.D.W.Va. Jan. 20, 2012)(citing, Morningstar v. Black & Decker Mfg. Co., 162 W.Va. 857, 888, 253 S.E.2d 666, 682 (1979). Additionally, the plaintiff must prove that a causal link exists between the injury and a defect in the defendant's product. White v. Dow Chemical Co., 2007 WL 6948824, at *3 (S.D.W.Va. Nov. 29, 2007), aff'd, 321 Fed.Appx. 266 (4th Cir. 2009). It is well established that a defendant is liable only when its act or omission caused injury to the plaintiff. Atkinson v. Harman, 151 W.Va. 1025, 158 S.E.2d 169 (1967).

A review of the record reveals that summary judgment is appropriate in the instant case. First, the undersigned finds no issue of material fact. Although Plaintiff disputes Defendants' claim that

12

Plaintiff used turpentine, this is not an issue of material fact. Although the use of turpentine may be

relevant to a possible cause of Plaintiff's skin condition, it is not a material fact as to whether the

Gorilla Tape caused Plaintiff's skin condition. Additionally, Plaintiff's self-serving statement that

he did not use home remedies is insufficient to contradict his medical records and the Affidavit of

Mary-Ellen McGrath. Ms. McGrath, an employee of Gorilla Glue Company, states that "[d]uring our

September 13, 2011, phone call, Mr. Rocchetti told me that he had invented his own 'salve' which

he was putting on his rash. Mr. Rocchetti stated that he believed that this 'salve' was working better

than the prescription cream that was recommended by his dermatologist." (Document No. 30-4.)

Additionally, Dr. David Tolliver states that every attempt was made to diagnose and treat Plaintiff's

condition, but  it "became a very difficult case" because of Plaintiff's "noncompliance and self

treatment." (Document No. 37-1 p. 10.)

      Next, Plaintiff contends that the opinions of Defendants' experts do not support summary

judgment and should be disregarded because the experts were paid by Defendants. The mere fact that

an expert is paid to render his opinion is insufficient to discredit the reliability of that expert's

opinion. In support of their Motion for Summary Judgment, Defendants produce the opinion of two

expert witnesses: (1) Dr. Clyde Richard; and (2) Dr. Richard Capito. Both of Defendants' experts

state that Gorilla Tape is not the cause of Plaintiff's skin condition. After reviewing the Gorilla Tape

packaging, MSDS sheet, the Gorilla Tape chemical analysis and the Gorilla Tape West Virginia

Poison Control Report, Dr. Richards concluded that "there is no cobalt or other 'poison' contained

within Gorilla Tape." (Document No. 30-3, p. 4.) Dr. Capito conducted an independent medical exam

of Plaintiff and concluded as follows:

               I feel by my exam that [Plaintiff] now has a combination of mild eczematous
               dermatitis, skin steroid atrophy from using steroid cream for a prolonged

> period of time on his skin and mild steroid rasacea of skin from using a
> medium potency steroid of his skin for a prolonged period of time. There is
> no evidence that I can see that the initial use of "Gorilla Tape" caused the
> rash.

(Document No. 30-3, p. 18.) In his Affidavit, Dr. Capito states that "[i]t is my opinion with a

reasonable degree of medical probability/certainty that [Plaintiff] suffered no injury or damage

relating to his two-hour attachment of a piece of Gorilla Tape (three inches) to his body." (Document

No. 30-5, p. 2.) Dr. Capito explains that he "believes with a reasonable degree of medical

probability/certainty that [Plaintiff] has eczematous dermatitis with skin atrophy from using steroid

creams on his skin for a prolonged period of time (which he had been warned against by his physician

Dr. Asbury)." (Id.) Dr. Capito states that "[n]one of these conditions are either initially or in the long

term caused by Gorilla Tape" and Plaintiff's "skin condition and present medical problems are caused

by something other than this two-hour application of the three-inch piece of Gorilla Tape to his

body." (Id., pp. 2 - 3.) In his Supplemental Affidavit, Dr. Capito specifically states that Plaintiff

"suffered no injury or damage relating to his two-hour attachment of a piece of Gorilla Tape (three

inches) to his body as a result of any cobalt, titanium dioxide or latex." (Document No. 36-9, p. 2.)

Dr. Capito explains that "[a]s a further basis for this opinion I rely on the testimony of [Plaintiff] and

the medical records themselves wherein [Plaintiff] states that he has used latex in the past with no

allergic reaction, there is no cobalt in Gorilla Tape and that titanium dioxide as used in Gorilla Tape

is not toxic." (Id.)

As stated above, summary judgment is required when a party fails to make a showing

sufficient to establish an essential element of a claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-

53. In the instant case, Plaintiff fails to make a showing sufficient to establish causation. Specifically,

Plaintiff fails to establish that cobalt, titanium dioxide, or latex contained in the Gorilla Tape caused

his injury. In his response to Defendants' Interrogatories, Plaintiff indicates that he has no expert witnesses. (Document No. 30-7.) Plaintiff's conclusory statement that Gorilla Tape caused his skin condition is insufficient. See Harris v. Norfolk Southern, 2012 WL 6209164, *3 (S.D.W.Va. Dec. 13, 2012)("conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion"). Plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 447 U.S. at 256, 106 S.Ct. at 2514. Specifically, Plaintiff must offer "more than a mere scintilla of evidence" to support his claim that Gorilla Tape caused his skin condition. Plaintiff argues that summary judgment is inappropriate because "the Poison Control papers"[6] contain all the proof he needs to support his claim that the Gorilla Tape caused his skin condition. Plaintiff further asserts that "Dr. Stein and Dr. Asbury both treated me for the Gorilla Tape rash only and the Poison Control papers prove the rest of it." Although Plaintiff states that the MSDS sheet proves Gorilla Tape caused his condition, the MSDS sheet merely sets forth possible side affects. The MSDS Sheet regarding Gorilla Tape provides that "[p]rolonged, repeated contact with adhesive may cause skin irritation," but hand protection is "[n]ot required under normal conditions of use. However, care should be taken to avoid contact with the adhesive." (Document No. 37-1, pp. 1 - 5.) The MSDS Sheet further advises that first aid measures are to "[w]ash skin thoroughly with soap and water. Obtain medical attention if blistering occurs or redness persists." (Id., p. 2.) Although the MSDS sheet indicates that skin irritation may result, the MSDS sheet does not establish by "more than a mere scintilla of evidence" that Plaintiff actually experienced this side effect due to his alleged 2-hour use of the Gorilla Tape. Further, Plaintiff's own physicians do not conclude that Gorilla Tape caused his condition. Dr. Asbury's chart notes dated

---

[6] Plaintiff appears to be referring to MSDS sheet as the "Poison Control papers." Plaintiff attaches a copy of the MSDS sheet as an Exhibit.

January 6, 2011, indicate that Plaintiff's biopsy revealed that his skin condition was "most consistent with a drug eruption or similar hypersensitivity reaction" and "it may be related to his sensitivity to the adhesive in the tape." (Document No. 34-1, p. 5.) Dr. Asbury further notes that Plaintiff has "tried a few of his own home remedies," which "may have caused some further irritation." (Id., p. 6.) In a letter dated March 6, 2013, Dr. Stein states as follows:

> I have diagnosed [Plaintiff] with chronic eczematous dermatitis, which consists of exacerbations and remissions of itchy, dry, variably inflamed skin. Per [Plaintiff], this condition started after application of Gorilla Tape to his skin in late 2010 and has persisted since . . . . While this issue may have been initiated by application of Gorilla Tape, I do not feel that this exposure is continuously causing the problem with [Plaintiff's] skin.

(Id., p. 16.) In his Affidavit, Dr. Stein further explains, in pertinent part, as follows:

> 2. I began to treat [Plaintiff] in April, 2011, for a skin condition he alleges was the result of exposure to Gorilla Tape.
>
> 3. At no point have I ever told [Plaintiff] that he has cobalt poisoning, or suggested that cobalt may be the cause of his medical issues.
>
> 4. At no point have I ever told [Plaintiff] that titanium dioxide is the cause of his condition.
>
> 5. My diagnosis for [Plaintiff] was chronic eczematous dermatitis.
>
> 6. I did not treat [Plaintiff] for his initial complaints.

(Document No. 36-9, p. 5.) There is no evidence that Dr. Asbury or Dr. Stein concluded that Plaintiff's use of Gorilla Tape caused his skin condition. It appears that any reference to Gorilla Tape by Dr. Asbury and Dr. Stein was based solely on Plaintiff's statement that his skin condition developed following use of Gorilla Tape. Based upon the foregoing, the undersigned finds that there are no genuine issue of material fact and Defendants are entitled to judgment as a matter of law concerning the above issue.

2.      **Failure to Warn:**

Plaintiff claims that Defendants failed to properly label the Gorilla Tape. Specifically, Plaintiff complains that "there was no label to say you couldn't use it on your skin." Defendants contend they were not require to warn against direct application to the skin. Defendants argue that Plaintiff's "use of Gorilla Tape as a back brace is not foreseeable and therefore does not require a warning label." In Response, Plaintiff appears to argue that if Defendants had adequately labeled the Gorilla Tape warning of possible skin irritation, Plaintiff would not have applied the tape to his back and suffered injury.

Under West Virginia's strict products liability doctrine, a plaintiff may pursue a failure to warn theory of recovery. See Ilosky v. Michelin Tire Corp., 172 W.Va. 435, 307 S.E.2d 603 (1983). "For the duty to warn to exist, the use of the product must be foreseeable to the manufacturer or seller." Id., 172 W.Va. at 437, 307 S.E.2d at 605. The West Virginia Supreme Court has explained that a failure to warn claim is based "not so much on a flawed physical condition of the product, as on its unsafeness arising out of the failure to adequately label, instruct, or warn." Morningstar, 162 W.Va. at 888, 253 S.E.2d at 682. Failure to warn claims "covers situations when a product may be safe as designed and manufactured, but which becomes defective because of the failure to warn of dangers which may be present when the product is used in a particular manner." Ilosky, 172 W.Va at 441, 307 S.E.2d at 609.

Viewing the facts in the light most favorable to Plaintiff, the undersigned finds no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law. Dr. Richards concluded that "Gorilla Tape is manufactured and labeled in a prudent and safe manner and there is no defect relating to the manufacture or labeling of Gorilla Tape." (Document No. 30-3, p. 4.)

17

Specifically, Dr. Richards explains as follows:

> Gorilla Tape is packaged and labeled in such a manner that it is clear that this tape is for use in construction type projects. My research shows that this tape is not typically sold in an area of pharmacy where one would expect to find bandages and/or tapes for use on the human body.
> I am of the opinion that to use Gorilla Tape to attach something to a person's skin is such an open and obvious misuse of the product that warning about this misuse of the product is not necessary.

(Id.) Additionally, Dr. Asbury's notes reveal that he advised Plaintiff that Gorilla Tape "was not intended for use on skin." (Document No. 34-1.) The promotional and advertising materials of a business are admissible as evidence of what is the intended and foreseeable use of a product. See King v. Kayak Mfg. Corp., 182 W.Va. 276, 287-88, 387 S.E.2d 511, 522-23 (1989). The promotional and advertising materials for Gorilla Tape show the product being used as a tool for domestic repairs, such as car pairs, boat repairs, and waterproofing. Gorilla Tape advertises that the tape will adhere to rough surfaces that other tapes would be unlikely to adhere to. Specifically, videos and testimonials indicate that Gorilla Tape is intended for difficult and high stress repair. The record further reveals that Plaintiff purchased Gorilla Tape at Lowe's knowing it was construction tape and for the purpose of using the tape to insulate his windows. (Document Nos. 36-5 and 36-6.) There is no evidence that the intended or foreseeable use of Gorilla Tape is for use on the skin or as a medical tape. Plaintiff's conclusory claim that it was foreseeable that someone would use Gorilla Tape on the skin as medical tape is insufficient. Based upon the foregoing, the undersigned find's no evidence that it was foreseeable to Defendant's that someone would use Gorilla Tape on the skin as medical tape.  Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment be granted. The undersigned finds it unnecessary to consider the other reasons which Defendants have submitted for dismissal.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' Motion for Summary Judgment (Document No. 30.).

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiffs, who are acting *pro se*, and transmit a copy to counsel of record.

Date: February 18, 2014.

R. Clarke VanDervort
United States Magistrate Judge

19